Good morning, Illinois Appellate Court, 1st District, 4th Division. Court is now in session. The Honorable Robert E. Gordon presiding, case number 17-1430, People v. George Rivera. Good morning to all. Good morning, Your Honors. Would the lawyers who are going to argue the case please introduce yourself to the court. Yes, good morning. I am David Harris, Assistant Appellant Defender on behalf of the Petitioner Appellant George Rivera. And Assistant State's Attorney Douglas Harbath on behalf of the people of the State of Illinois. All right, the Appellant, do you want to reserve some time for rebuttal? Yes, I would. Five minutes, please. Okay. We will ask you questions after your argument. So, let's proceed. Yes. Thank you. May it please the court. George Rivera was 23 years old when he committed and was eventually convicted and found guilty of felony murder by accountability for a shooting that took place half an hour after he left the scene. He was sentenced to his de facto life time of 55 years in prison. Now, he merely seeks leave to file a successive post-temporary petition so he can have the assistance of counsel in the trial court to properly develop his claim, a claim that will eventually lead him to request a new sentencing hearing where a judge considers the factors relevant to youth before determining if he is eligible for a de facto life term. The relief he requests is modest, and he has satisfied the correspondingly modest threshold for that relief. The legal principles in this case are relatively straightforward. For juveniles, life sentences, whether natural or de facto, mandatory or discretionary, violate the Illinois Constitution unless the sentencing judge considers special characteristics of youth and determines that the offender is irreparably depraved or permanently incorrigible. These principles can now also apply to young adult offenders who are not juveniles at the time of their offense. The only question is whether Rivera, who was 23 at the time of this offense, should be granted the opportunity to argue that they do apply to him as well. At this stage of the proceedings, he doesn't need to conclusively show that these Miller principles apply to him. This court simply needs to find a prima facie showing that these Miller principles can apply to him such that he should have that opportunity in the trial court to proceed with the assistance of counsel. And the prima facie showing presumes and foresees further proceedings. Prima facie simply means, essentially, upon first appearance that's subject to further evidence and information. Forbidding leave to file based on Rivera's age forecloses this type of case-by-case analysis that is appropriate in as-applied constitutional challenges. Essentially creating a rule that 23-year-olds are beyond some as-yet-established limit for Miller claims. But when the Illinois Supreme Court approved the post-conviction proceedings for young adult offenders for a chance to show that Miller applies to them, it did not draw any lines. One way further proceedings might not be necessary is if the original sentencing hearing complied with Miller, as the Illinois Supreme Court has explained it in Holman. This requires not just standard consideration of factors and aggravation and mitigation, or even just mere consideration of chronological age, but also considering relative immaturity, the failure to appreciate consequences, and the home environment, the degree of participation in the homicide and peer pressure, and any special prospects for rehabilitation that might apply more to younger people than to older offenders. The sentencing hearing in this case did not satisfy this more vigorous standard. The judge never even mentioned Rivera's age. Rivera also adequately pleaded his claim in his pro se filings. He wrote he should have a meaningful review to determine if he is, in fact, one of the young adults whose crime reflects unfortunate yet transient immaturity, or the rare young adult whose crime reflects irreparable corruption. He said he should have a sentencing hearing that reflects his rehabilitative potential and its potential borne out by accommodations while incarcerated. He also cited appropriate authority, including People vs. House, which recognized studies showing that the brain does not stop developing until the mid-20s. And as House accepted, this is especially true regarding impulse control, the ability to foresee consequences, and susceptibility to peer pressure. Here, Rivera joined a robbery organized and led by the 31-year-old co-defendant, David Guevara, who crafted the plan, recruited the participants, and supplied the guns. And Rivera would be unlikely to foresee a death that occurred half an hour after he left the scene and after the planned robbery of this drug money was successfully completed. Also, nearly all of his co-defendants got less prison time, including at least one of the two people who fired gunshots. This diminished culpability and disproportionate sentence in relation to his offenders were important factors in House. So the record substantiates Rivera's claim, which again has to just be a prima facie showing at this point. And importantly, he pleaded these facts in his petition. His accountability for an unforeseen murder and that he got a greater sentence than the people who remained on the scene and for half an hour beat up the robbery victims and two people who eventually fired completely needless shots in the dark as they were leaving 30 minutes after he left, or between 20 and 40 minutes after he left. So again, the only remaining question is whether the 23-year-old Rivera should be given the mere opportunity to develop a record with the assistance of Post-Conviction Council to make the argument that he should be given a new Miller-compliant sentencing hearing. As courts have throughout our history, they are following the science on this. While lines are often drawn for clarity, acknowledging the science as in House that the brain development, including these relevant factors that lead to enhanced criminality in young people, lasts into the mid-20s and then drawing a line earlier makes no sense. George Rivera, a 23-year-old who cannot be expected to foresee a felony murder occurring half an hour after he left the scene of an already completed heist, much less being accountable for it, just wants a chance to present his claim with the assistance of counsel in the trial court. That's all. That's all I'm asking this court to grant him today. Thank you, and I'm happy to address any questions you have. Let me ask you this. What evidence do you have that this 23-year-old has the mind of a juvenile? The evidence that 23-year-olds could have the mind of a juvenile is supported by social science studies and psychological studies, including what's cited in the briefs and cited in House, that the adolescent brain is not fully formed, especially in regards to these crucial decision-making centers of the brain, until the mid-20s. And the facts support the application here because those factors include impulse control and peer pressure and inability to foresee consequences. And here the facts bear that out, where he joined a planned heist, planned by an older 23-year-old, and then once more people were roped into it, there's this sense of peer pressure of not wanting to back out, and then the lack of foreseeability in this shot in the dark, essentially, that killed someone 30 minutes after he left and long after the plan was fully executed, the plan that he thought he was a part of was fully executed and stealing his drug money. What we're asking now is for proceedings with the Assistance of Counsel in trial court to fully develop the record and to be able to argue and show why these factors apply to him. At this point, he's a pro se litigant in prison without access to every scientific journal out there. He needs this type of help, and I think that's what the Supreme Court suggested in Harris when suggesting post-conviction proceedings are appropriate to develop this factual record. All right, so your position is you don't have to show at this stage anything? You need to show, based on your pleadings and the record of prima facie showing, just the mere appearance at first glance that Miller principles might perhaps apply to him. Unless rebutted in the future by further evidence and further record. I think there's the pleading in House, as far as the decision reveals at least, what they quoted from the decision didn't make any specific claims of any sort of individual brain defects or anything like that. The pleading in House simply said the same thing, citing the language of these studies that the brain doesn't develop until 25. And that was even at the further stage, that was at second stage, and that defendant got a new sentencing hearing. We're just asking for the mere chance for him to have the assistance of counsel to properly shape this claim. And the recent reversal and grant of leave to file in Ruiz by another division of this court just last week also had minimal pleading. It pleaded the same language that Mr. Rivera has pleaded about social science and about the possible applicability of Miller factors to young offenders. And maybe I think he had one other line saying, essentially, also these apply to me, which is implicit in any request for relief under this. So I don't think drawing the line between whether you get further post-conviction proceedings or not should hinge on just adding one sentence or four words, these apply to me. I think that is far too harsh of a stance to take against pro se litigants. We're simply asking for the assistance of counsel to develop this claim that the sentence may be unjust. Justice Lampkin, do you have any questions? I think I have a couple. Counsel, you said that the client has to make a prima facie showing of prejudice. That, to me, means he has to allege some facts. I would like to know what facts he's alleged, showing that he basically has the mind of a juvenile, has some of the impetuosity or taking kind of actions that young people would take who don't think. And then in release, the defendant was 18 years old. Do you think that that makes a difference? I think he pled more than, and the facts apply to me, if my recollection of the case is. But I would like you to answer that for me. First, I think the prima facie showing needs to be based on the pleadings and the record. And what he pled also includes facts. It's not just about my brain is one of these undeveloped brains. You look at the whole host of factors that would be considered in a Miller sentencing hearing, including the relative culpability compared to, and the degree of participation, and a factor that he relied on in-house of the disproportionate sentence to perhaps more involved co-defendants. He pleaded those facts, that he did not plead every single fact that might be needed at second stage or an evidentiary hearing does not foreclose his claim. He pleaded the relevant facts in-house of getting longer sentences and people who stayed and beat up the victims and including one person who fired a gunshot. He pleaded the lack of foreseeability of a shooting that happened half an hour after he left the scene. And also the record supports the claim. So I don't think the pro se defendant needs to get every single word into his pro se simple leave for request to file that will eventually be required and made at a full evidentiary hearing with the assistance of counsel. So I think, yes, he pleaded enough in this case. As far as 18 and 23, again, the House included involved a 19-year-old and granted significantly more relief than we're asking here of granting an actual new sentencing hearing. We just want the chance to argue for a new sentencing hearing. And Harris, again, recognized that the U.S. Supreme Court drew an age limit for facial challenges under the Eighth Amendment and did not draw an age limit for proportionate felonies challenges as applied. And even said that a court's not capable of making an as-applied constitutional determination when there's been no evidentiary hearing or no findings of fact. So that the Illinois Supreme Court didn't draw a line, I don't think means that appellate courts should start drawing lines of certain age cutoffs. I know the state has suggested possibly up to 21. There was a recent decision that pierced that request already, granting relief for a 21-year-old granting leave to file. That case wasn't published, so it's not precedential authority, but it shows courts, as People v. Merriweather just a week or two ago, another division of this court, courts aren't stopping at certain age limits. It's for the determination should be left after the development of the record in the trial. I just have one other question. How old, well, it's actually two. How old were Mr. Rivera's co-defendants and did they have a criminal history like he did? I was able, I'm able to determine the age of three of the co-defendants. They were David Guevara, who organized the plan and supplied guns and recruited additional members right at the last minute when they saw there were more people showing up, was 31. I don't know his criminal history, I don't know their criminal histories. Then two others were 20 and 21. Alvin Harris, who was one of the people who, the facts aren't perfectly clear because the lights were shut off, but it seemed Alvin Harris was one of the shooters. He was 20 years old and he got a 25 year sentence for murder. Maurice Taylor was 21 years old and got 60 years. The other three... And how many? 60 years. He was the only one who got more than Mr. Rivera. But one of the shooters got 25 years and he was 20 years old. The other three, I don't know their age. They were, the other three were acquitted of first degree murder and got 12 years and 20 years respectively for the other two. So, Mr. Rivera is serving far more time, almost double the amount, or double the amount of time of everyone except one of the other offenders. Thank you, counsel. Justice Reyes, do you have any questions? Yeah, I just have a couple. Did Mr. Rivera participate at all in the planning of this incident? He was present for discussions. It's clear from both the statement of Jason Ricard that was introduced and from Mr. Rivera's own statement that David Guevara, the 31-year-old, was essentially the ringleader devising the plan. Mr. Ricard's statement that was introduced substantively at trial said that Mr. Rivera was present, but Guevara and the co-defendant, Maurice Taylor, were the ones devising the plan in the most part, but Rivera was present for the discussion. And again, there's these factors of abuse build upon each other. There could be impulsivity to join what sounds like a very lucrative robbery and get away with it cleanly, which is actually what happened to him until 30 minutes later someone fired a gunshot. And then once you're wrapped into this with a group of six co-defendants, there's peer pressure to remain in and an inability to foresee those consequences down the line when the plan is to rob the drug money and go. And then your co-defendants, including the 31-year-old ringleader, stay, beat up the victims, rob them of personal effects, which has nearly no value compared to the tens of thousands of dollars they were robbing in a drug heist, and fire a gunshot in the dark after they turned the lights off half an hour after he left. So these factors all build upon each other. But doesn't the fact that we don't have an impetuous act here, but in fact, it's something that he participated in, it was staged and planned, very detailed in terms of how it was supposed to be carried out. Doesn't that weigh against your argument about him, you know, falling under the Miller standards? I don't think not necessarily, because as I said, there's a great impulse, especially for a younger person to think we're going to make $27,000. All we have to do is, you know, these quick steps and we're done. And then once you're roped in, there's peer pressure to remain in, especially when the leader of Guevara is recruiting a couple more people at the last minute because they feel like they need more manpower. So they all build upon each other. There might not be impulsivity at the time of the robbery because he's planned to do this, but there's impulsivity to jump at the chance of a big quick score. And then there's peer pressure. And then there's also a lack of foreseeing this consequence of accountable felony murder for a gunshot fired randomly in the dark 30 minutes later. I don't think that necessarily undermines the claim. And also, while he was a participant, he wasn't, of course, the principal shooter or involved in any of the physical beating. He was long gone before any of that. So I think he fits more comfortably with people who were, as he was, held accountable, as opposed to being the principals for people who are committing crimes, solo crimes, where there's no peer pressure because they're doing it all by themselves. This is Judge Lampton again. I'm sorry. You said he didn't... He wasn't participating in the beating, but my recollection of the facts is that he made a couple of... I'm sorry. The idea was coming out a little. Made a couple of what? I said... I'm looking at my screen and unfortunately is having a problem with the internet connection. I said, you said that he wasn't involved in the beating, but I said my recollection of the facts, I could be, I could be incorrect. But I thought when he drove up into the garage and the other guys got out, he made the people in the car, in Mr., I can't think of the guy's name, car, get out of the car and beat one of those people. I think that that was the facts of the case. I personally don't recall if he actually did hit one person. I know he was there only for about a minute. He came in, they were pretending to be police, busting up a drug deal. And he quickly made off with the car and perhaps hit someone, but the remaining people beat up all, I think, six or so victims, beat them up, stole personal belongings. And then two of them, Mr. Harrison Taylor, fired a shot after turning off the lights as they were leaving 20 to 40 minutes later. So, well, yes, he was, he was more than a lookout. He was, he participated in the act of offense of robbery. He left half an hour later in the course of beating, stealing more personal property, and then shooting. He was not an active participant in that. And compared to lookout in that sense, he's not even enabling it, where a lookout might be enabling this beating and shooting to continue by standing guard and warning people of any approaching authorities. He was long gone. So in that sense, it's, there's some distinctions between a lookout, some way against him and some way in favor of him because he was not expecting or enabling this half an hour beating and shooting. All right. Thank you. No further questions. Okay. Let's proceed with the response. Thank you, Your Honors, and good morning, Assistant State's Attorney Douglas Harbath on behalf of the people, and may it please the court. The trial court properly denied Defendant Leib to file his successive petition, and this court should affirm the ruling for a number of reasons. First, although counsel has argued today that it implicates the Eighth Amendment, as we argued in our briefs, Defendant's claim under the Eighth Amendment necessarily fails for the Illinois Supreme Court. And this court has repeatedly held that the Eighth Amendment analysis in Miller v. Alabama applies only to offenders under 18. It does not apply to 23-year-olds like Defendant. No Illinois decision is held otherwise. Second, Defendant's proportionate penalties clause claim also fails because the analysis in the Illinois Supreme Court's decisions in Harris and Thompson applies only to youthful offenders. That is, those under 21. Defendant has cited no decision involving a defendant as old as 23. They're all 18 or 19-year-old offenders. And beyond the Illinois Supreme Court's own refusal to presume that a Miller-based proportionate penalties clause claim is available to those under 21, the Illinois General Assembly itself does not view a 23-year-old offender as a youth. On the contrary, recent Miller-based statutory enactments, including the new parole review system, indicate that our legislature has unambiguously identified 21 as the dividing line between youthful offenders and adults for purposes of sentencing. 21, as we argue in our brief, 21 is also the cutoff age for countless others' criminal and non-criminal statutes. Third, the proportionate penalties analysis in Harris and Thompson applies only to mandatory life sentences, not those imposed upon an exercise of the trial court's discretion. And this court, this very division, in fact, has expressly held, excuse me, has expressly rejected an as-applied constitutional challenge based on the proportionate penalties clause at the leave-to-file stage for a discretionary de facto life sentence imposed upon an 18-year-old. That's the handy decision. While a discretionary sentence, life sentence imposed upon a juvenile offender may implicate the Eighth Amendment, this court should hold, as it already has, that a discretionary sentence imposed upon an adult offender does not violate the proportionate penalties clause. Further, where the trial court has the ability to consider and does consider, as it did in this case, factors and mitigation, including the defendant's youth and his individual circumstances and his rehabilitative potential, and in its discretion, imposes a lengthy, even a de facto life sentence, there is no violation of the proportionate penalties clause. To be clear, in this case, the defendant faced a minimum of 35 years and a maximum of 75 years, yet the trial court imposed a discretionary term of 55 years, in its own words, given the violent and brutal nature of the offense, and again, in its own words, defendant's very active, those are his quotes, a very active role in the crimes. And this court, in its decision following direct appeal, affirmed those findings and also agreed with the trial court that the defendant's role was an active role. And finally, and this is perhaps most important, particularly in light of the new decisions that have come down by the First Division, Ruiz and Johnson, and where this oral argument has sort of seemed to be headed the prejudice prong. Most importantly, in terms of establishing prejudice for the leave to file stage, defendant's motion and his successive petition did not even plead. To be clear, he did not plead in this petition that his own specific facts and circumstances warranted sentencing as a juvenile, as required by Harris. In fact, defendant failed to even allege that he personally possessed the cognitive characteristics of a juvenile, much less support them with any documentation or even an affidavit. Instead, he merely presumed, which is contrary to all the authority, not the least of which is Harris itself, but even accepting, and we believe that Ruiz and Johnson were both wrongly decided, but even those decisions clearly indicate that a defendant cannot presume that he's entitled to further post-conviction proceedings based on his age, his sentence, and citing case law, which is all he did. Such a bare-bones pleading does not remotely satisfy the prejudice requirement for leave to file any successive post-conviction petition, including a Miller-based petition. In his petition, defendant actually indicated, and I think this is very telling, that he's absolved of submitting any documentation in the petition. This petition lacks any factual support whatsoever, and it should not be deemed sufficient. If this petition was deemed sufficient, then it would seem that every other young adult with a lengthy discretionary sentence would be automatically entitled to second stage proceedings. This is totally inconsistent with legions of post-conviction case law explaining the burden for establishing prejudice. A successive petition that is as conclusory as defendants' is would not even satisfy the lower just standard for the first stage, much less prejudice warrants in second stage proceedings. For all these reasons, this court should affirm the trial court's judgment denying defendant leave to file his successive petition. Turning to the Eighth Amendment argument in defendant's brief, and I will touch on this because it was raised in his reply brief. No court has held that Miller's Eighth Amendment protections apply to adult offenders. They only apply to those under 18. In Harris itself, the Supreme Court said, and I quote, in the appellate court held that Harris' Eighth Amendment claim fails because he, quote, falls on the adult side of the line. We agree, unquote. This court has also repeatedly rejected as-applied Eighth Amendment challenges raised by adults. The cases in Handy and Pittman. None of those cases in Handy, which is probably most significant because it is a post-Harris decision, did not delimit Harris to facial Eighth Amendment challenges as defendant argues in his reply brief. In short, Miller is categorically limited to those under 18 for Eighth Amendment purposes generally, regardless of whether or not it's a facial or an as-applied challenge. With regards to the Proportionate Penalties Clause claim, this should be rejected because the analysis in Harris and Thompson applies only to truly youthful offenders, meaning those under 21. As I've indicated, defendant has cited no case of an offender that is over the age of 21. And it's interesting because Harris and Thompson themselves, the sort of the underpinning for this claim and all these claims, did not even involve someone older than 21. Harris was 18, Thomas was 19. And both of those cases, the defense in that case only even asked the Supreme Court to advance the Miller-based claim to, quote, adults under 21 in Harris and Thompson to individuals aged 18 to 21. So even those decisions themselves don't even contemplate someone as old as 23. But I think perhaps more importantly, this court should look to legislative enactments and hold that 21 is the cutoff. The Illinois Supreme Court in Buffer looked to recent statutory enactments to assess a Miller-based claim, and it looked at the new statutory scheme for defendants under 21 to resolve that a de facto life sentence is more than 40 years. Well, we know that the General Assembly does not view those over 21 as youthful. We know that because of the new parole review statutory scheme that is, quote, for a person under 21 years of age at the time of the offense. The legislature has clearly identified 21 as a dividing line. There are numerous other examples, I won't go through all of them, but I think one of the most important ones is the Class X sentencing statute. The Class X sentencing statute for recidivist offenders applies only to those over 21. Wardship terminates at 21. The sale of alcohol and tobacco is prohibited to those under 21. The list is very long. So where our legislature does not even view those over 21 as juveniles in the wake of Miller, this court should likewise hold that Miller-based claims are not available to 23-year-olds like the defendant. We also argue in our brief that the proportion of penalties clause analysis in Harrison-Thompson only applied to mandatory life sentences and not discretionary terms. The entire underpinning of those cases, including not just Harrison-Thompson themselves, but House, which the defendant principally relies on, the underpinning of those is clearly based on the inability of the sentencing court in those cases to even consider any aspect of mitigation whatsoever because they involve mandatory life sentences. And the defendant factually stands in stark contrast to House himself. I know your honors asked a number of questions about the defendant's involvement in the case. And to be clear, the defendant was not just an accountable offender. And he certainly was not just a, quote, lookout as House was. He was only accountable for the murder itself to the extent that he was not physically present and he didn't physically pull the trigger. But I want to be perfectly clear that the defendant in this case was intimately involved in the planning and execution of all the offenses. He actively participated in the planning of it. He actually recruited another offender to participate in the ruse, the fake robbery. And he did it. Justice Lamkin was asking your honor about whether or not he punched someone. And he did. When he forced two men out of Frederick Jameson's SUV, the defendant struck and he struck one of the victims, Corey Brown, in the head. And he ordered Brown and Jonathan Stevenson at gunpoint to lay face down on the ground. That's not an accountable offender. That defendant, excuse me, that is a principal offender in an aggravated vehicular hijacking or armed robbery or both. And to suggest that the defendant was only there for a minute or two. Well, he was there for about five minutes is what the evidence shows. And five minutes is a long time to carry out a series of beatings and robberies. And whether you're accountable for the murder itself does not diminish the defendant's culpability for the offense in general. And finally, you've used up your time already. You want to sum it up? Yes. Just with regard to the, I think this really does turn on prejudice. And I think this court had asked some very prescient questions of my opponent about whether or not the defendant had to plead some facts. Justice Lampkin, what facts did he allege? Well, he didn't allege any facts. He literally did this treated as sort of almost arithmetic. My age plus my sentence plus people versus house equals second stage proceedings. No decision has said that even Ruiz and Johnson, which we arguably wrongly decided for a number of reasons. Even those cases, Justice Hyman says that Harris instructs that a young adult offender is not entitled to a presumption that Miller applies. He must plead that his individual characteristics require application of Miller. If and only if he makes this threshold show and should leave to file be allowed. So for those reasons, we ask that this court affirm the trial court's judgment. Thank you very much. Rebuttal, you have three minutes. I would know. Oh, wait, wait. Before we do that, does anyone have any questions? I don't have any questions. I do not. Thank you. I don't have any questions. No. Thank you. OK, let's proceed with everybody. OK. And you said just three minutes. Well, he was a principal in other offenses that would not lead to a life sentence. He was not the principal in a murder. And that's, I think, the key factor of this analysis. He was a participant in a planned robbery and was long gone before the gunshot fired in the dark half an hour later. His pleading pleaded not just house and some general language. He also pleaded facts that were relevant in house that he wasn't there for the shooting. He was long gone. It wasn't foreseeable. And his comparable sentence to more culpable co-defendants. Those are factual pleadings. And the record also bears this out. If I can, I'm sorry, I can interrupt you. But how does that go to his youth and his impetuosity? Well, those are all relevant. Those relate to the factors of youth and impetuosity, as explained in Holman and in house. That he didn't plead all five, something to line up with all five factors announced in Holman, I don't think forecloses his claim. He pleaded enough to get counsel to help develop, properly develop this claim. If he's denied leave because he didn't plead enough facts, that wouldn't create any sort of bar to a future pleading. He can file the same petition with the one or two sentences saying additionally, also these apply to me as in house and in Ruiz, and we'll just be repeating the cycle again. He should just get to go back, have an attorney help craft this argument and proceed, because that's what would happen with sufficient pleading in a new petition. The sentencing hearing was incredibly brief. The judge didn't mention age. There's no way that was a Holman and Miller compliant sentencing hearing. As far as discretionary versus mandatory and counsel referred to this court's decision in handy, the court has not delineated between discretionary and mandatory for Miller claims. You know, you're way past your time. You know, you're way past your time. You're starting to become repetitious. I'm sorry. Can I make one additional point then about, because I expected some time in rebuttal. One additional point about counsel's point that there's no decision going as far as old as 23. And I mentioned Meriwether at least pierced the cutoff at 21. But there's always a first case. There's always a first case. And those cases tend to have a habit of being validated later. Graham was the first case to bar mandatory life for juveniles for non homicide offenses. That was validated by Miller and Montgomery going further for homicide in Illinois. You know, this is not proper rebuttal. I think you ought to sum it up. Oh, I'm sorry. I thought I was responding to his claim that there's no case. No case yet would support this. These exact facts. I'll wrap it up that there's a first for everything. Gibson was a first under the proportionate penalties clause that was validated by the legislative action. House was a first granting going beyond the age 18 to young adults. That was validated by the Illinois Supreme Court's case in Harris. So that there's no specific case exactly on point with a 23 year old in a published decision. This is not itself a principled reason to deny relief. So I'd ask this court remand to allow him to develop the claim and simply argue in the trial court with the help of counsel that this might apply to him. Thank you. Thank you very much. You'll have our decision very shortly.